# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERNEST ASIEDU ODEI and SPIRIT OF GRACE OUTREACH, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) No. 17-cv-06019 |
| v. | )<br>) Judge Andrea R. Wood |
| U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, and SHERIFF BILL PRIM, custodian of McHenry County Jail, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ernest Asiedu Odei, a national of Ghana and a Christian pastor, and Spirit of Grace Outreach, Inc. ("SOGO"), an Illinois nonprofit religious organization, have brought this lawsuit against Defendants U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Federal Defendants"),[1] and Sheriff Bill Prim, in his official capacity as custodian of McHenry County Jail ("MCJ"). Plaintiffs allege that Odei attempted to enter the United States on a valid B-1/B-2 visa to conduct religious missionary and academic activities in conjunction with and at the invitation of SOGO, but CBP refused Odei entry to the United States and transferred him to ICE custody, under which he was detained for a week at MCJ. Plaintiffs further allege that while detained at MCJ, the Federal Defendants and Prim subjected Plaintiffs to unlawful limitations on their religious exercise by denying Odei access to a Bible and prohibiting SOGO from delivering

---

[1] Plaintiffs do not assert any claims against DHS specifically, but both CBP and ICE are agencies within DHS. (*See* First Am. Compl. ¶¶ 14–15, Dkt. No. 22.)

one to him. Odei further claims that Prim failed to notify him of his right to have the Ghanaian consulate contacted on his behalf in violation of the treaty of the Vienna Convention on Consular Relations ("Vienna Convention Treaty"). And finally, Odei alleges that the Federal Defendants violated the Freedom of Information Act ("FOIA") by failing to produce records and improperly redacting records in response to Odei's FOIA requests to both agencies seeking documents relating to his denial of entry and detention. Now before the Court is Defendant Prim's Motion to Sever and Transfer Venue or in the Alternative to Dismiss First Amended Complaint (Dkt. No. 26) and the Federal Defendants' Motion to Dismiss (Dkt. No. 29).

## BACKGROUND

For the purposes of Defendants' motions to dismiss, this Court accepts as true the well-pleaded facts in Plaintiffs' First Amended Complaint and views them in the light most favorable to Plaintiffs. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). Plaintiffs have alleged as follows.

Odei is a pastor with the World Anointed Christian Church in Accra, Ghana and a PhD candidate in the online doctoral leadership studies program at Christian Johnson University, a Christian institution located in Knoxville, Tennessee. (First Am. Compl. ("FAC") ¶ 18, Dkt. No. 22.) He is also one of the original founders and board members of SOGO. (*Id.* ¶ 19.) Odei attempted to enter the United States from his home country of Ghana with a B-1/B-2 visa that authorized him to enter the United States as a temporary visitor for business or pleasure. (*Id.* ¶¶ 2, 17.) Odei intended to engage in missionary activities, such as speaking to churches and addressing youth groups at the invitation of SOGO's President, Theresa Heaton, and to meet with academic advisors at Christian Johnson University. (*Id.* ¶¶ 2, 20–21.)

When Odei reached O'Hare International Airport, however, CBP officers questioned Odei about the purpose of his visit and then refused to allow him entry into the United States and ultimately cancelled his visa. (*Id.* ¶ 3.) After determining that he was inadmissible, CBP transferred Odei to ICE custody. (*Id.* ¶ 30.) At ICE's direction, Odei was detained at MCJ for the next week before he voluntarily returned to Ghana. (*Id.* ¶¶ 30, 35.) While Odei was detained at MCJ, jail officials refused his requests to be given his Bible and otherwise denied him access to a Bible. (*Id.* ¶¶ 30, 61, 66.) The same officials refused to allow SOGO to supply a Bible for Odei and instead told SOGO President Heaton that she must mail it. (*Id.* ¶¶ 33, 62, 66.) In addition, even though MCJ officials knew that Odei was a foreign national, no official asked Odei if he wanted to contact his consular officials or have the Ghanaian consulate notified of his detention, as required under the Vienna Convention Treaty. (*Id.* ¶¶ 84–85.) Nor did Sheriff Prim notify any officials of the Ghanaian consulate that Odei was in the jail's custody. (*Id.* ¶ 86.)

Because Odei was not able to complete his planned missionary and academic activities that were the purpose of his trip to the United States, he intends to reapply for a B-1/B-2 visa and attempt to return to the United States to engage in these activities. (*Id.* ¶ 36.)

Odei has brought claims against CBP under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. (Count I); against CBP and ICE under FOIA, 5 U.S.C. § 552 *et seq*. (Counts V and VI); and against Prim under 42 U.S.C. § 1983 for violations of the Vienna Convention Treaty (Count VIII).[2] In addition, both Odei and SOGO have brought claims against the Federal Defendants under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*. (Counts II and III), and against Sheriff Prim under the Religious Land Use and Institutionalized

---

[2] Initially, Odei also brought a claim against CBP and ICE for violation of the Vienna Convention Treaty (Count VII) but he subsequently indicated in his response to the Federal Defendants' motion to dismiss that he was voluntarily dismissing that claim. (Pl.s' Resp. to Fed. Def.s' Mot. to Dismiss at 8 n.3, Dkt. No. 35.)

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. (Count IV). Plaintiffs seek injunctive and declaratory relief against all Defendants. Defendants do not assert any claim for damages.

**DISCUSSION**

I. **Defendant Prim's Motion to Sever and Transfer**

The Court turns first to Prim's motion to have the claims against him severed from the claims against the Federal Defendants and for his severed case to be transferred to the Western Division of this District. In support of his motion, Prim contends that the claims against him are separate and distinct from those against the Federal Defendants and that the alleged conduct involving him occurred in the Western Division.

The Federal Rules of Civil Procedure permit the joinder of defendants in the same action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). But where unrelated claims against different defendants appear in the same suit, those claims and defendants should be severed. *See* Fed. R. Civ. P. 21 (permitting a court to sever any misjoined party or claim at any stage of a lawsuit); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In addition, the Court has discretion to sever a party at any time "if doing so will increase judicial economy and avoid prejudice to the litigants." *Purzel Video GmbH v. Does 1-84*, No. 13 C 2501, 2013 WL 4478903, at *4 (N.D. Ill. Aug. 16, 2013). Among the factors to consider are when the alleged conduct occurred, whether the same people were involved, whether the conduct was similar, and whether it implicated a system of decision-making or widely-held policy. *See, e.g.*, *Martinez v. Haleas*, No. 07 C 6112, 2010 WL 1337555, at *3 (N.D. Ill. Mar. 30, 2010). Once

severed, a district court "may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Prim's argument that Plaintiffs' claims against him are independent from the claims against the Federal Defendants is simply not accurate. While the claims against Prim concern only events that occurred after Odei was transferred to MCJ, he is incorrect in asserting that there are no common claims or issues of fact or law between the allegations against him and those against the Federal Defendants. For example, the FAC alleges that Odei was sent to MCJ at the direction of ICE and was in ICE custody during his detention there. Plaintiffs' response to Prim's motion further clarifies that ICE ordered that Prim be detained at MCJ because it is one of ICE's immigration detention facilities. Thus, Plaintiffs' claims against the Federal Defendants overlap significantly with their claims against Prim. The FAC also asserts claims against the Federal Defendants relating to the alleged denial of Odei's access to a Bible at MCJ, including the thwarting of SOGO President Heaton's attempt to supply one. Because the FAC establishes that the claims against Prim arise from the same occurrences as a portion of the claims against the Federal Defendants and will involve common questions of fact and law, Prim's motion to sever and transfer the claims against him is denied.

## II. Defendants' Rule 12(b)(1) Motions to Dismiss

### A. Federal Defendants' Motion to Dismiss Counts I and II for Lack of Subject-Matter Jurisdiction

In Counts I and II, Plaintiffs challenge CBP's determination that Odei was not admissible to the United States under his valid nonimmigrant B-1/B-2 visitor visa. Specifically, in Count I, Odei challenges CBP's decision under the Administrative Procedure Act, and in Count II, both Plaintiffs challenge the decision as a violation of RFRA. However, the statutory scheme governing CBP's decision that Odei was not admissible to the United States (and was subject to

removal) explicitly removes review of the CBP's decision from this Court's jurisdiction. The Court therefore does not have subject-matter jurisdiction over Counts I and II, and those claims must be dismissed. *See generally, e.g.*, *Evers v. Astrue*, 536 F.3d 651 (7th Cir. 2008) (affirming dismissal for lack of subject-matter jurisdiction where statute removed dispute from federal jurisdiction, reasoning "[f]ederal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute . . . [i]t is well-established that a precisely drawn, detailed statute preempts more general remedies" (internal quotations omitted)).

Specifically, CBP determined that Odei was an inadmissible alien under 8 U.S.C. § 1182(a)(7), which provides that immigrants at the time of application for admission must possess a valid unexpired immigrant visa. If an immigration officer

> determines that an alien . . . who is arriving in the United States . . . is inadmissible under . . . § 1182(a)(7) . . . the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i). Except for in limited circumstances not applicable here, "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision by the Attorney General to invoke" 1225(b)(1), or "the application of such section to individual aliens . . . ." 8 U.S.C. § 1252(a)(2)(A). This Court therefore does not have jurisdiction to review the CBP's decision that Odei was inadmissible to the United States and subject to removal.[3,4] *See Khan v. Holder*, 608 F.3d 325, 329–30 (7th Cir. 2010).

---

[3] Moreover, the statute further provides that even where an exception applies and a court may review a determination under § 1225(b)(1), "no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)," except as specifically identified in a series of authorizations that do not apply in this case. 8 U.S.C. § 1252(e)(1)(A). Plaintiffs here seek only declaratory and injunctive relief. Thus, even if the Court *could* review the CBP's

The Seventh Circuit confirmed in *Khan v. Holder* that the statutory scheme discussed above prevents federal courts from reviewing a determination by an immigration officer that an alien should be removed under 8 U.S.C. § 1225(b)(1). *Id*. In *Khan*, the plaintiffs obtained valid B1-B2 nonimmigrant visitors' visas to travel to the United States. When they arrived at O'Hare, a CBP officer determined that the plaintiffs intended to immigrate to the United States rather than visit temporarily. *Id.* at 326. The *Khan* plaintiffs were detained by DHS, determined to be inadmissible under 8 U.C.S. § 1182(a)(7), and processed for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i). On the plaintiffs' petition for review from the removal order, the Seventh Circuit held that it lacked jurisdiction to review the merits of whether the CBP officer correctly initiated expedited removal proceedings. *Id*. In so holding, the Seventh Circuit noted:

> The troubling reality of the expedited removal procedure is that a CBP officer can create the § 1182(a)(7) charge by deciding to convert the person's status from a non-immigrant with valid papers to an intending immigrant without the proper papers, and then that same officer, free from the risk of judicial oversight, can confirm his or her suspicions of the person's intentions and find the person guilty of that charge. . . . To say that this procedure is fraught with the risk of arbitrary, mistaken, or discriminatory behavior . . . is not, however, to say that courts are free to disregard jurisdictional limitations. They are not, and we thus must align ourselves with the courts that have considered the issue and hold that we lack jurisdiction to inquire whether the expedited removal procedure to which the [plaintiffs] were subjected was properly invoked. . . . There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

*Id*. at 329–330 (citing 8 U.S.C. § 1252(e)(5)).

---

decision—which it cannot—it would be unable to grant the relief Plaintiffs seek.

[4] In holding that the Court is stripped of jurisdiction by 8 U.S.C. § 1252(a)(2)(A), the Court does not adopt the Federal Defendants' related argument that the Court may not review the CBP's decision under the doctrine of consular nonreviewability. Consular nonreviewability is the "general rule that decisions to issue or withhold a visa are not reviewable in court unless Congress says otherwise." *Matushikina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017) (internal quotation marks omitted). "The doctrine bars judicial review of visa decisions made by consular officials abroad." *Id.* There is no dispute that Odei was granted a valid visa by a consular officer, and this decision by a consular official is not the subject of Plaintiffs' complaint. Thus, the doctrine of consular nonreviewability is not at issue here. *Id.* at 296 (distinguishing the District Court of Washington, D.C.'s decision in *Maramjaya v. U.S. Citizenship & Immigration Servs.*, No. 06-2158 (RCL), 2008 WL 9398947 (D.D.C. Mar. 26, 2008) because "*Maramjaya* simply did not involve a visa denial").

The Court notes that, ultimately, Odei was not removed pursuant to the expedited removal process but rather he elected to withdraw his application for admission and leave the United States voluntarily, as permitted by 8 U.S.C. § 1225(a)(4). (FAC ¶ 35.) However, what Plaintiffs seek to challenge in Counts I and II is the CBP's decision that Odei was inadmissible under 8 U.S.C. § 1182(a)(7) and therefore subject to removal from the United States under 8 U.S.C. § 1225(b)(1)(A)(i). That Odei elected to depart voluntarily before he was removed does not change the fact that the Court cannot review the CBP's decision that he was inadmissible and subject to removal. *See, e.g.*, *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) (holding that the court did not have jurisdiction to review visa decision even though plaintiff's claim challenged the visa decision indirectly to avoid the jurisdictional bar).

Counts I and II are therefore dismissed because the Court lacks subject-matter jurisdiction to review Plaintiffs' claims.

### B. All Defendants' Motions to Dismiss for Lack of Article III Standing

The Federal Defendants and Prim move to dismiss the claims against them relating to Odei's alleged treatment while he was detained at MCJ on the basis that Plaintiffs lack Article III standing because they have failed to allege an injury-in-fact sufficient to show entitlement to prospective relief. Specifically, the Federal Defendants move to dismiss Plaintiffs' RFRA claim relating to the alleged denial of access to a Bible (Count III), and Prim moves to dismiss Plaintiffs' RLUIPA claim relating to the same (Count IV). In addition, Prim moves to dismiss Odei's consular notification claim (Count VIII).[5]

---

[5] The Federal Defendants also have moved to dismiss Counts I and II for lack of Article III standing. But because the Court does not have subject-matter jurisdiction to review those claims, it need not reach the issue of whether Plaintiffs have Article III standing to bring them. *See, e.g., In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("[T]he Supreme Court has consistently held that there is no mandatory 'sequencing of jurisdictional issues.' Indeed, a federal court has leeway 'to choose among threshold

To have Article III standing to seek prospective relief, "the plaintiffs must show that: (1) they are under actual threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). "In order to survive a challenge to standing, a plaintiff must plead sufficient factual allegations that plausibly suggest each of these elements." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 740 (2018). To establish the first element, injury-in-fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). For purposes of seeking prospective injunctive relief in particular, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000); *see also Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017) ("Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief."); *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Defendants argue that the sequence of events that would need to occur for Plaintiffs to be "under actual threat of an actual and imminent injury in fact" is too speculative to confer standing under the facts of this case. They contend that Odei would need to attempt again to enter the

---

grounds for denying audience to a case on the merits.'" (quoting *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422 (2007))).

9

United States, be denied entry, be detained at MCJ, and be subjected to the same treatment while detained as alleged in the FAC.

But the FAC indeed alleges that Odei intends to reapply for a new B-1/B-2 visa and attempt to return to the United States to engage in the same type of missionary and academic activities that, due to Defendants' actions, he was unable to complete on his last visit. (FAC ¶ 36.) In their response brief, Plaintiffs further clarify that because Odei was unable to complete his goals for visiting the United States on his previous trip, he now has an urgent need to return to fulfill the religious engagements and complete the meetings with his academic advisors that are necessary for him to progress with his dissertation. (Pl.s' Resp. to Prim's Mot. at 6.) Plaintiffs further explain that it is likely that on a return trip Odei would again end up back in MCJ, as that is one of ICE's main facilities for detaining foreign nationals denied admission at O'Hare. (*Id*. at 7.)

Taking the issue of Odei's standing first, assuming without deciding that these allegations are sufficient to establish a likelihood that Odei will again be denied entry to the United States and detained at MCJ,[6] the allegations are nonetheless insufficient to establish that it is "actual and imminent" rather than "conjectural or hypothetical" that Odei will again be denied access to a Bible or that MCJ officers will again fail to inform him of his consular notification rights.

---

[6] This case differs from *O'Shea v. Littleton*, 414 U.S. 488 (1974), which Defendants cite for support. In that case, the plaintiffs' allegation that they would be injured again in the future rested on the likelihood that they would again be arrested for and charged with violations of criminal law. The Court declined to anticipate that the plaintiffs would again "violat[e] lawful criminal statutes," reasoning that "[w]e assume that [the plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction," and thus held that the plaintiffs could not establish future injury. *Id*. at 496. Here, in contrast, Plaintiffs do not allege that Odei's previous detention resulted from his violation of valid laws (that he would therefore need to violate again in order to be subjected to future injury), but rather that he sought entry on a valid B-1/B-2 visa and Defendants unlawfully detained him based on an erroneous interpretation of the appropriate activities for visitors on such a visa. Thus, according to the FAC, because of Defendants CBP and ICE's erroneous interpretation of permissible activities under a B-1/B-2 visa, when Odei again attempts to travel to the United States to conduct the activities he was unable to complete on his last trip, he will again be denied entry and detained.

*Schirmer*, 621 F.3d at 585; *Spokeo*, 136 S. Ct. at 1548. The FAC does not allege facts suggesting any sort of policy, custom, or practice at MCJ of denying detainees' requests for a Bible or not informing detainees of their consular notification rights. Indeed, the FAC alleges only that prison officials "denied [Odei] access to a Bible," refused his request for his own Bible, and failed to ask Odei if he wanted to contact his consular officials. (FAC ¶¶ 30, 33, 61, 62, 66, 85.) Without any allegation that such conduct occurred repeatedly or was otherwise part of a policy, practice, or custom, the alleged conduct amounts to nothing more than "isolated" misconduct, which is not enough to establish standing for prospective relief. *Schirmer*, 621 F.3d at 587 (where challenged conduct was of an "isolated misuse" of an ordinance by defendant police officers without any allegation of a "policy or custom" or "persistent pattern" of misapplying the ordinance, plaintiffs did not have standing for prospective relief); *see also Allee v. Medrano*, 416 U.S. 802, 815 (1974) (finding injunctive relief appropriate where "there is a persistent pattern of police misconduct," in contrast to "[i]solated incidents of police misconduct under valid statutes [which] would not, of course, be cause for the exercise of a federal court's equitable powers").

Turning to the issue of SOGO's standing, the FAC alleges that prison officials "prevented SOGO from supplying a Bible to [Odei] in any meaningful manner" because a guard told SOGO's President that she must mail the Bible to give it to Odei, and by the time the mailed Bible reached MJC, Odei had left the country. (FAC ¶¶ 33, 62, 66.) The FAC further alleges that this "substantially burdened SOGO's religious mission to bring the Bible's message to others." (*Id*. ¶ 67.) Because any alleged future injury to SOGO is premised on an initial future denial of Bible access to Odei, SOGO does not have standing to sue for the same reasons as discussed above with respect to Odei.

In addition, to establish injury-in-fact, a plaintiff must allege an injury that is not only "actual or imminent," but also "concrete and particularized." *Spokeo*, 136 S. Ct. at 1548. For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id*. And for an injury to be "concrete," it must be "'de facto;' that is, it must actually exist." *Id*. In other words, it must be "'real,' and not 'abstract.'" *Id*. Any alleged injury to SOGO does not meet these requirements. The allegations demonstrate that SOGO did not suffer any harm, as it was permitted to mail a Bible to Odei. That SOGO's President did not mail a Bible to Odei until less than two days before he departed the United States—thus precluding him from receiving that Bible—is not a concrete and particularized injury that can be redressed with a favorable judicial decision. Alleging a violation of the RFRA or RLUIPA is not in and of itself enough to establish injury-in-fact for Article III purposes. *See, e.g.*, *Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."); *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (similar). SOGO fails to establish standing for this reason as well.

In sum, the Court finds that the complaint does not allege facts sufficient to establish that either Plaintiff has standing to sue for injunctive relief on Plaintiffs' claims relating to Bible access, or that Odei has standing to sue for injunctive relief on his consular notification claim. Counts III, IV, and VIII are therefore dismissed without prejudice.

### III. Odei's Freedom of Information Act Claims Against CBP and ICE

Next, the Court turns to Odei's FOIA claims against CBP and ICE (Counts V and VI). Odei alleges that he submitted FOIA requests to CBP and ICE, and both government agencies failed to conduct adequate searches and produce all relevant records. The Federal Defendants

argue that the FOIA claims should be dismissed as moot because they have fully responded to all Odei's requests.

Where the agency has produced everything requested, the plaintiff's claim for relief under FOIA should be dismissed as moot. *See Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 (7th Cir. 2009). In evaluating the adequacy of an agency's search and production, "the issue is not whether other documents may exist, but rather whether the search for undisclosed documents was adequate." *Becker v. I.R.S.*, 34 F.3d 398, 406 (7th Cir. 1994) (internal quotations omitted); *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) ("[F]ailure of an agency to turn up one specific document in its search does not alone render a search inadequate."). Adequacy is presumed based on reasonableness, and "[e]vidence that a search was reasonable and conducted in good faith generally comes in the form of reasonably detailed conclusory affidavits submitted in good faith." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) (internal quotations omitted); *see also Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 842601, at *4 (N.D. Ill. March 6, 2013) (finding that affidavit describing the paper and electronic searches conducted was sufficient evidence that agency produced all responsive documents to plaintiff).

CBP and ICE both assert that they have produced everything in their custody that Odei requested under FOIA. In support, ICE has submitted affidavits from ICE FOIA Director Catrina Pavlik-Keenan and Deputy FOIA Officer Fernando Pineiro, stating that ICE searched for and produced all responsive records. The affidavits set forth ample detail regarding the search process ICE executed in response to Odei's request. For example, with the help of its Enforcement Removal Operations ("ERO") Information Disclosure Unit, ICE directed specific employees, including the ERO Field Operations Director, to search their file systems and produce any

responsive documents. A Management and Program Analyst for ERO also searched its Enforce Alien Removal Module application ("EARM"), using Odei's first name, last name, date of birth, country of birth, and A-file Number as search terms. ICE also contacted the National Records Center of United States Citizenship and Immigration Services ("USCIS") to inquire about potentially responsive documents. CBP similarly provided affidavits from Shari Suzuki, the Chief of the FOIA Appeals, Policy and Litigation Branch for CBP, detailing CBP's search and production of all responsive records. Suzuki explains in her affidavit that CBP searched the ENFORCE records system and contacted the National Records Center of USCIS. The search apparently found three sets of documents in response to Odei's request—one consisting of 3 pages, another 49 pages, and a final 36 pages—which CBP produced to Odei in their entirety.

Odei nonetheless claims that CBP and ICE are withholding documents, inferring from the agencies' policies that they must have certain documents, such as Odei's booking record, classification work sheet, personal property inventory sheet, housing identification card, property receipt, and baggage check. To rebut Odei's theory, ICE has submitted a declaration from Deputy FOIA Officer Pineiro, stating that ICE does not have any of these documents and directing him to either MJA or the USCIS. CBP also has submitted an affidavit from Watch Commander Jaime Gray, describing the procedures that CBP used to process Odei for expedited removal and explaining that CBP did not inventory Odei's personal effects. Odei also challenges the legitimacy of CBP's redactions. In response, CBP provided a Vaughn Index outlining its redactions and assuring Odei that no document was withheld in full. To date, Odei has not indicated that he has any objections to the Vaughn Index.

"The very point of a suit under [FOIA] is to resolve disputes about the legitimacy of an agency's refusal to fully honor a request for disclosure." *Furrow v. Fed. Bureau of Prisons*, 420

Fed. Appx. 607, 610 (7th Cir. May 6, 2011).[7] Based on the above, the Court finds that CBP and ICE have not refused Odei's requests but rather honored them through adequate searches and productions. Therefore, the Court grants the Federal Defendants' motion to dismiss Counts V and VI as moot.

## CONCLUSION

For the foregoing reasons, Defendant Prim's Motion to Sever and Transfer Venue or in the Alternative to Dismiss First Amended Complaint (Dkt. No. 26) is denied in part and granted in part. Specifically, the motion to sever and transfer venue is denied, but the motion to dismiss Counts IV and VIII is granted. The Federal Defendants' Motion to Dismiss (Dkt. No. 29) is also granted.

ENTERED:

Dated: August 31, 2018

Andrea R. Wood
United States District Judge

---

[7] *Furrow* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order's reasoning is persuasive and provides a useful point of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).